**STAGG, MATHER & HOUGH, Plaintiff, Appellant,**

v.

**Sol Luis DESCARTES, Secretary of the Treasury of Puerto Rico, Defendant, Appellee.**

No. 5131.

United States Court of Appeals First Circuit.

May 17, 1957.

Walter L. Newsom, Jr., San Juan, P. R., Brown, Newson & Cordova, San Juan, P. R., on the brief, for appellant.

Manuel J. Medina Aymat, Asst. Atty. Gen. of Puerto Rico, J. B. Fernandez Badillo, Atty. Gen. of Puerto Rico, on the brief, for appellee.

Before MARIS, WOODBURY and KALODNER, Circuit Judges.

WOODBURY, Circuit Judge.

This appeal from a judgment, obviously a "final decision," of the Supreme Court of Puerto Rico is properly before this court under Title 28 U.S.C. § 1293, for not only is a substantial federal constitutional question involved, but also the value of the insular taxes in controversy far exceeds $5,000, exclusive of interest and costs.

The plaintiff-appellant, Stagg, Mather & Hough, is a common law partnership of professional accountants organized in New York expressly under the laws of that State. It maintains its principal office in the City of New York and branch offices in Havana, Cuba and San Juan, Puerto Rico. Of the several partners, only one, who manages the San Juan branch, is a resident of Puerto Rico.

During the tax years involved, 1942 to 1947 inclusive, the partnership paid the insular income taxes on its local income due from the partnership as a taxable entity, but it paid these taxes at the statutory rate for "domestic" partnerships, not at the higher rate set for "foreign" ones. On its tax returns for those years it gave its main office as in the Bank of Nova Scotia Building in San Juan. We are not here directly concerned with the liability for income taxes imposed by local law on the partnership as a business unit. Our concern is with the legal liability of the partnership to withhold income taxes on the profits from its local business distributable to the individual partners who are non-residents of Puerto Rico and concededly not citizens of that Commonwealth.

Puerto Rico, in addition to imposing income taxes on both foreign and domestic partnerships as such, also imposes income taxes on the partners individually, be they citizens of Puerto Rico or non-residents who are not citizens of the Commonwealth, on their respective distributive shares of what remains after payment of the partnership tax. See Ballester v. Descartes, 1 Cir., 1950, 181 F.2d 823, 831, 832. It does not, however, make any attempt to tax non-resident, non-citizen partners on income except from sources within Puerto Rico. The Income Tax Act of 1924, Act No. 74 of August 6, 1925, Laws of Puerto Rico 1925, p. 400 et seq., as it stood at the critical time after numerous amendments, principally by Act No. 31 of April 12, 1941, Laws of Puerto Rico 1941, p. 478 et seq., after defining gross income in broad and conventional terms, provided in § 15(c):

"In the case of a nonresident individual not a citizen of Porto [sic] Rico gross income means only the gross income from sources within Porto [sic] Rico, determined under the provisions of Section 19."

And Section 19, so far as here material, provided:

"(a) In the case of a nonresident individual not a citizen of Puerto Rico the following items of gross income shall be treated as income from sources within Puerto Rico.

\* \* \* \* \*

"(2) The amount received as partnership profits \* \* \* when more than twenty (20) per centum of its gross income has been derived from sources within Puerto Rico, as determined under the provisions of this Section. \* \* \*"

Then in Section 22(a) it was provided in material part:

"All persons, in whatever capacity acting, including \* \* \* all \* \* partnerships having the control \* \* \* of \* \* \* participation in partnership \* \* \* profits, and other fixed or determinable annual or periodical profits or income, of any nonresident individual not a citizen of Puerto Rico, shall \* \* \* de-

duct and withhold from such annual or periodical * * * profits *or* income, the normal and additional tax fixed by this Act on any nonresident individual not a citizen of Puerto Rico. * * *"

In the definition sections of the Act as it stood amended at the time involved, it was provided by § 2(a) (3) that:

"The term 'partnership' includes civil, business, industrial, agricultural and professional partnerships or of any other kind, whether or not its constitution is set forth by public deed or private document; and it shall include, further, two or more persons, under a common name or not, engaged in a joint venture for profit."

And following this in subdivisions (4) and (5) it was respectively provided:

"The term 'domestic' when applied to corporations or partnerships means those created or organized in Porto [sic] Rico under the laws of Porto [sic] Rico.

"The term 'foreign' when applied to corporations or partnerships means all those which are not domestic."

The Act taxed citizens of Puerto Rico at a lower rate than nonresidents who are not citizens, and domestic partnerships at a lower rate than foreign ones.

During the years involved Stagg, Mather & Hough took the position that in view of § 19(a) (2), supra, it was not required to withhold income taxes on the distributive shares of the non-resident, non-citizen partners [1] in the income and profits of its local business for the reason that substantially less than 20% of its annual gross income was derived from sources within Puerto Rico. The Treasurer of Puerto Rico, however, thought otherwise and on August 23, 1949, notified the partnership of the assessment of withholding tax deficiencies for the years in question totalling approximately $17,000. His as-

sessment was administratively affirmed and the partnership thereupon filed a complaint against the Treasurer in the Tax Court of Puerto Rico, now no longer in existence, asking that the deficiency assessment be set aside. The Treasurer answered asserting, *inter alia,* that the plaintiff, as to its local business, was not a foreign partnership having a branch in Puerto Rico, but on the contrary, for insular income tax purposes, it was a domestic professional partnership, or *sociedad,* which derived 100% of its income from sources within Puerto Rico with the result that the provisions of § 19(a) (2) supra did not apply to relieve it of the obligation to withhold taxes on the distributive shares of its non-resident, non-citizen partners. Alternatively the Treasurer asserted that even though the plaintiff were not a domestic partnership or *sociedad,* as he contended, nevertheless it was estopped to deny its domestic status by its payment of the income taxes assessed against it as a partnership at the statutory rate for domestic partnerships and its statements in its returns that its main office was in San Juan.

The Tax Court after hearing found that Stagg, Mather & Hough was a professional partnership organized in and under the laws of the State of New York and that it offered its services as public accountants and comptrollers within and outside the United States. And it found that although the partnership did business in Puerto Rico during the tax years involved, its gross income from its activities in Puerto Rico during each of those years was substantially less than 20% of its total gross income as reported for federal income tax purposes. Nevertheless the Tax Court found that the partnership was not excused from withholding the income taxes due from its non-resident, non-citizen partners by the 20% provision of § 19(a) (2) supra. The Tax Court did not base this conclusion on the Treasurer's theory. It recognized

---

1. It was concededly under no obligation to withhold income taxes on the distributive share of the resident partner in charge of its Puerto Rico branch.

that Stagg, Mather & Hough was a foreign partnership but it concluded that because the Puerto Rico statutes did not provide for the admission to do business in Puerto Rico of foreign partnerships, as local statutes did for foreign corporations, it was not and could not be admitted as a partnership to carry on its business locally and therefore had no juridical personality in Puerto Rico and hence was not a partnership or *sociedad*, within the statutory definition. Thus the Tax Court concluded that Stagg, Mather & Hough did not fit within the provisions of § 19(a) (2) with respect to partnerships deriving less than 20%′ of their gross income from sources within Puerto Rico. It regarded the members of the partnership as merely individuals doing a local business through the agency of one of their number who represented them locally, so that the net income from their local activities distributable by the local member to the non-resident, non-citizen members of the partnership was subject to withholding tax under § 22(a) above. The Tax Court also suggested an alternative basis for its result which we need not state. It will suffice to say that in the view it took of the tax statutes it affirmed the Treasurer's assessment without finding it necessary to consider his estoppel argument.

Stagg, Mather & Hough appealed from the Tax Court to the Supreme Court of Puerto Rico and that court entered the judgment of affirmance from which this appeal is taken.

We are rather in the dark as to the reasons for the Supreme Court's judgment of affirmance. One justice filed an opinion favoring affirmance on the Treasurer's theory, but not on the reasoning of the Tax Court.[2] Only the Chief Justice concurred in this opinion, one Justice took no part, another dissented and there was one vacancy on the Court at the time. While the two remaining Justices must have agreed to affirmance, otherwise the judgment would not have had the support of a majority, we do not know their reasons. Obviously they did not concur on the reasoning of the only opinion written in the case. Nor can we safely assume that they must have agreed with the Tax Court's reasoning for in that event we suppose their concurrences would have been noted as resting on the decision of that court.

While we feel somewhat handicapped by the lack of any authoritative rationale for the decision arrived at by the Supreme Court of Puerto Rico, we nevertheless feel that we must vacate and reverse its judgment.

The only opinion we have from the Supreme Court of Puerto Rico follows and develops the contention advanced by the Treasurer administratively and in both insular courts. It is that because Stagg, Mather & Hough is a common law partnership lacking juridical personality in the state of its organization, New York, it does not in its entirety fit within the term "partnership," or "*sociedad*," as defined in § 2(a) (3) and hence as the word is used in § 19(a) (2). Instead, the argument runs, it is a "partnership" or "*sociedad*" within the statutory meaning of the term only in so far as it is carrying on a local business in Puerto Rico. Wherefore it is said that in the eyes of the statute it is a domestic partnership deriving 100% of its income from sources within Puerto Rico with the result that the 20% provision of § 19(a) (2) has no application.

Both the judgment of the Tax Court, and so far as we know the judgment of the Supreme Court of Puerto Rico also, are based on a narrow interpretation of the term "partnership" or "*sociedad*," in that they rest upon the basic proposition that because the appellant is a common law partnership without independent legal personality in the state of its origin, it is in consequence not a "partnership" or "*sociedad*" as that term is used in the Income Tax Act. From this point on the

---

**2.** The Treasurer does not urge affirmance by this court on the Tax Court's theory, nor apparently did he do so in the Supreme Court of Puerto Rico, quite obviously because under that theory it is very doubtful whether the partnership as a separate entity could be subjected to income taxes on its local income.

opinions take different routes. The Tax Court proceeded to disregard any and all provisions in the local tax act relating to partnerships, whereas the Supreme Court, so far as we can tell with assurance, separated the appellant's activities in Puerto Rico from its operations as a whole and considering its activities in Puerto Rico alone, concluded that as to these operations it was to be considered a domestic partnership. That is to say, according to the Tax Court's view, taxability of the appellant's distributions to its partners was determined by § 22 alone, whereas the Supreme Court, insofar as we know its view, determined taxability under § 22 only after it had first determined that the appellant, as far as its local income was concerned, was a partnership 100%· of whose profits were from sources within Puerto Rico and therefore not within the exception created by § 19(a) (2).

■ We do not need to consider these disparate conclusions separately, for we think the narrow construction of the statutory definition of a partnership on which both conclusions rest as a basic premise is clearly and obviously erroneous.

Section 2(a) (3) of the Income Tax Act, supra, as might be expected in an act subjecting partnerships as entities to income taxation, defines the word "partnership" very broadly indeed. It defines the term to include partnerships engaged in specified activities, "or of any other kind," and "whether or not its constitution is set forth by public deed or private document," and then it goes further and sweeps within the embrace of the term even "joint venture[s] for profit." To hold in the face of such broad language that the statutory definition covers only those partnerships which are considered legal entities having juridical personality under local law seems to us clearly at variance with the basic purpose of the statutory definition and the all inclusive tenor of the language used by the legislature. Moreover, to hold that the statutory definition does not cover partnerships which are not legal entities is directly inconsistent with the inclusion

within the statutory definition of partnerships the constitutions of which are private documents, for § 1560 of the Civil Code of Puerto Rico (1930) provides:

> "Partnerships, the articles of which are kept secret among the partners, and in which each one of the latter may contract in his own name with third persons, shall have no judicial personality.

> "This kind of partnership shall be governed by the provisions relating to property held in common."

Moreover, the inclusion in the definition of joint ventures, which are not strictly speaking partnerships even at common law, indicates clearly that the term was not meant to be limited only to those civil law partnerships which are separate legal entities.

■ Furthermore, to adopt the view of the only opinion from the Supreme Court of Puerto Rico would result in a differentiation tax-wise between partnerships organized in states adhering to the common law, non-entity, view and partnerships organized in states following the civil law, entity view. Thus the exclusionary provision of § 19(a) (2) would apply if a partnership were organized in a state such as Louisiana or Iowa, see Ballester v. Descartes, 1 Cir., 1950, 181 F.2d 823, 829, but would not apply if the partnership were organized in a state like New York. And this differentiation as we see it raises a serious question of denial of equal protection of the laws under the Fourteenth Amendment of the Constitution of the United States and under the similar provision in Article 2, § 7 of the Constitution of the Commonwealth of Puerto Rico. Admittedly, legislatures have broad powers of classification for the purposes of taxation. Nevertheless the equal protection clause requires that legislative "classification be not arbitrary, but based on a real and substantial difference, having a· reasonable relation to the subject of the particular legislation," Power Mfg. Co. v. Saunders, 1927, 274 U.S. 490, 493, 47 S.Ct. 678, 679, 71 L.Ed. 1165, and we do not off hand see any substantial difference with respect to local income taxation

between foreign partnerships organized in entity-view jurisdictions and foreign partnerships organized in jurisdictions following the non-entity view. There seems to us a grave question whether the differentiation attributed to the legislation in the only opinion from the Supreme Court of Puerto Rico would be constitutional in the light of Quaker City Cab Co. v. Com. of Pennsylvania, 1928, 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927.

It is true that this court in due process cases has not yet found it necessary to decide whether the Fifth or the Fourteenth Amendment applies in Puerto Rico, and the Fifth Amendment, unlike the Fourteenth, has no equal protection clause. But Fifth Amendment due process covers at least some denials of equal protection, for the Supreme Court in Bolling v. Sharpe, 1954, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884, after pointing out that both concepts stem from the American idea of fairness said:

"The 'equal protection of the laws' is a more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do not imply that the two are always interchangeable phrases. But, as this Court has recognized, discrimination may be so unjustifiable as to be violative of due process."

We need not and do not express any views on the knotty constitutional questions adumbrated above. Their mere presence is enough to militate against the construction of the statute adopted in the only opinion we have from the Supreme Court of Puerto Rico.

Other considerations pointing to the same conclusion might be mentioned. We think, however, that we have said enough to demonstrate that the appellee, Stagg, Mather & Hough, is so clearly a partnership within the meaning of the local tax statute, and in consequence that the exemption provided in its § 19(a) (2) applies, that any other ruling would be "inescapably wrong" or "patently erroneous," even under the strict rule of Sancho v. Texas Co., 1940, 308 U.S. 463, 60 S.Ct.

349, 84 L.Ed. 401, and De Castro v. Board of Commissioners, 1944, 322 U.S. 451, 64 S.Ct. 1121, 88 L.Ed. 1384.

We turn now to the Treasurer's argument that Stagg, Mather & Hough cannot be heard to say that it is anything other than a purely local partnership for the reason that it paid the income taxes assessed against it as such at the statutory rate for domestic partnerships and in its returns gave its main office as in the Bank of Nova Scotia Building in San Juan. There are several loop holes in the argument. It will suffice, however, to point out that there is no evidence that the Treasurer actually was ignorant of the fact that Stagg, Mather & Hough was a New York partnership doing only part of its business in Puerto Rico, and that he was actually lead by its payment of taxes at the domestic rate and the statement in its returns as to the location of its main office to the mistaken belief that it was a domestic partnership. On the contrary, there is evidence that during years prior to the tax years in question the Treasurer attempted to collect taxes from Stagg, Mather & Hough at the rate for foreign partnerships but it would seem that he abandoned his attempt in the face of the assertion that the higher statutory rate for foreign partnerships was unconstitutional, and indeed the assertion had validity during part of the tax period here involved. See Fiddler v. Tax Court, 65 P.R.R. 189 (1945), and Buscaglia, Treas. v. Tax Court and Ahumada, Intervenor, 65 P.R.R. 921 (1946). But cf. Buscaglia, Treas. v. Tax Court and Vahamonde, Intervenor, 68 P.R.R. 322 (1948). Also reports on the partnership's tax returns filed by tax examiners from the Treasurer's office gave the partnership's main office as in New York. Furthermore, there is no evidence that even if the Treasurer was lead to believe that the partnership was a domestic one, he took any action to his detriment on the basis of that belief. On this evidence, or lack of it, estoppel cannot be predicated under ordinary principles governing the doctrine and it is not suggested that any

unusual principles of estoppel are applied in Puerto Rico.

The Treasurer's further argument that since the partnership as such could not bring suit in the state of its organization it cannot maintain this suit hardly deserves comment. This defense was not raised at any stage below and no authority in Puerto Rico, or elsewhere, is cited in support of the premise upon which it rests. But even though we assume that under Puerto Rican law the law of New York rather than the law of the forum governs the partnership's capacity to sue, the argument overlooks § 222-a. of the New York Civil Practice Act, added by Laws 1945 c. 842, which provides that: "Two or more persons carrying on business as partners may sue or be sued in their partnership name whether or not such name comprises the names of the persons * * *." See Ruzicka v. Rager, 1953, 305 N.Y. 191, 111 N.E.2d 878, 39 A.L.R.2d 288.

Judgment will be entered vacating and setting aside the judgment of the Supreme Court of Puerto Rico and remanding the case to that court for further proceedings consistent with this opinion.