RAMÓN ANTONIO FOURNIER, peticionario y apelante, *v.* BALBINO GONZÁLEZ, ALCAIDE DE LA CÁRCEL DE DISTRITO DE SAN JUAN, demandado y apelado.

Número 12297.

*Sometido:* 29 de marzo de 1958. *Resuelto:* 18 de abril de 1958.

*Santos P. Amadeo, Rafael V. Pérez Marchand y Gerardo Ortiz del Rivero,* abogados del apelante; *Hon. Secretario de Justicia J. B. Fernández Badillo, Arturo Estrella, Secretario Auxiliar de Justicia, Alfredo Archilla Guenard y William Fred Santiago, Fiscal y Fiscal Auxiliar del Tribunal Supremo,* respectivamente, abogados del apelado.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

La única cuestión que se plantea en esta apelación es la siguiente: ¿Constituye una violación del debido proceso de ley garantizado por la Constitución de los Estados Unidos y por la Constitución del Estado Libre Asociado de Puerto Rico el hecho de que el veredicto del jurado declarando culpable de asesinato en primer grado a Ramón Antonio Fournier no fuera rendido por unanimidad y sí por más de nueve votos? El apelante sostiene que esta interrogación debe contestarse en la afirmativa. Específicamente alega que las disposiciones del Artículo II, Sección 11, inciso 2 de la Constitución

del Estado Libre Asociado de Puerto Rico (1 L.P.R.A. pág. 190) y del art. 185 del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 612), al no exigir unanimidad para que el jurado rinda veredicto en casos criminales, destruyen la presunción de inocencia y la regla de que el acusado sólo puede ser convicto mediante prueba más allá de duda razonable, por lo cual violan la norma de que ninguna persona puede ser privada de su libertad sin un debido proceso de ley. A nuestro juicio las contenciones del apelante son infundadas y procede confirmar la sentencia del tribunal a quo declarando sin lugar el recurso de hábeas corpus.

■■■ En *Pueblo* v. *Fournier*, 77 D.P.R. 222 (1954), revocamos la sentencia de reclusión perpetua impuesta al apelante luego de haber sido juzgado ante un jurado y declarado culpable por éste de haber asesinado, mediante estrangulación, a su ex esposa, Iris Nereida Hernández Matos. Ordenamos un nuevo juicio al determinar que una confesión dada por el acusado y admitida en evidencia había sido obtenida mediante coacción sicológica. El nuevo juicio se celebró a principios de 1955 y nuevamente un jurado encontró culpable a Fournier del delito de asesinato en primer grado. Fué condenado a la pena de reclusión perpetua.[1] El 19 de abril de 1956 Fournier solicitó del Tribunal Superior, Sala de San Juan, mediante recurso de hábeas corpus, que declarara nula e ineficaz esta segunda sentencia porque el veredicto del jurado en el segundo caso no fué rendido por unanimidad y sí por los votos de más de nueve de sus miembros. Expedido el auto y visto el caso en su fondo, el tribunal a quo declaró sin lugar el recurso. Fournier apeló ante este Tribunal Supremo el 9 de julio de 1957. El alegato

---

[1] El art. 202 del Código Penal (33 L.P.R.A. sec. 634) dispone que toda persona culpable de asesinato en primer grado será castigada con reclusión perpetua en el presidio. En 1917 se abolió provisionalmente en Puerto Rico la pena de muerte. Véase la Ley núm. 36 de 30 de noviembre de 1917 (Leyes, pág. 325). La Ley núm. 42 de 26 de abril de 1929 (Leyes, pág. 233) abolió permanentemente la pena de muerte en Puerto Rico. Véanse 33 L.P.R.A. sec. 634 y 34 L.P.R.A. sec. 993.

de sus abogados en apoyo del recurso de apelación fué presentado el 8 de noviembre de 1957. El informe del fiscal replicando a dicho alegato fué presentado el 28 de febrero de 1958. Habiendo solicitado el apelante una vista ante este Tribunal Supremo para informar oralmente su caso, la misma se celebró el día 29 de marzo de 1958, fecha en que quedó finalmente sometido el recurso.

Se admite que el jurado en el segundo juicio de la causa criminal contra Fournier lo declaró culpable del delito de asesinato en primer grado y que rindió su veredicto por mayoría de más de nueve, es decir, que el mismo no fué unánime. El párrafo 2 de la Sección 11 del Artículo II de nuestra Constitución dispone que en los procesos por delito grave el acusado " . . . tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve." Antes de 1952 no existía garantía constitucional alguna de juicio por jurado en Puerto Rico, ni en los casos civiles ni en los criminales, pero la Asamblea Legislativa había concedido el derecho a juicio ante jurado en casos de delitos graves y en ciertos casos de delitos menos graves. Art. 178, Código de Enjuiciamiento Criminal, ed. de 1935 (34 L.P.R.A. sec. 462). La Constitución del Estado Libre Asociado de Puerto Rico convirtió en 1952 el derecho estatutario a juicio por jurado en casos de delitos graves en un derecho constitucional. Fijó permanentemente en doce el número de los jurados pero no adoptó el requisito de unanimidad. Sólo dispuso que el veredicto nunca podría rendirse por menos de nueve votos, pero dejó en manos de la Asamblea Legislativa la facultad de aumentar el margen de mayoría hasta la unanimidad, si así lo juzgaba conveniente. Véase Informe de la Comisión de la Carta de Derechos de la Convención Constituyente de Puerto Rico, 21 Rev. Jur. U.P.R. 1; Diario de Sesiones, Convención Cons-

tituyente de Puerto Rico, págs. 601–03, 606.(²)   La Asamblea Legislativa no ha ejercitado ese poder y continúa en vigor hoy día lo dispuesto por el art. 185 del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 612), según fué enmendado por la Ley núm. 11 de 19 de agosto de 1948 (Leyes, pág. 213), al efecto de que: "En todos los casos en que, conforme a las leyes de Puerto Rico, un jurado debe rendir un veredicto, dicho veredicto será por acuerdo de no menos de tres cuartas ($\frac{3}{4}$) partes del jurado."

En primer lugar, nos parece obvio que la falta de unanimidad en el veredicto rendido por el jurado no viola el debido proceso de ley garantizado por nuestra Constitución.   La Asamblea Constituyente tenía conocimiento de las restricciones que siempre, desde principios de siglo, han existido en Puerto Rico en cuanto al juicio por jurado en casos criminales.   En los debates constitucionales se tuvo en cuenta el desarrollo peculiar de la institución del juicio por jurado en la administración de nuestra justicia criminal.   Se consideraron las ventajas y desventajas de dicha institución y sólo se incorporó una garantía limitada que se extiende únicamente a los "delitos graves" y que no incluye el principio de la unanimidad.   Así surge claramente del texto del inciso 2 de la Sección 11 del Artículo II de la Constitución.   Más aún: la Comisión de la Carta de Derechos y los miembros de la Asamblea Constituyente hicieron constar que estaban adoptando una fórmula constitucional que *permitiría* a la Legislatura aumentar en el futuro el margen de mayoría hasta la unanimidad.   Es imposible suponer que la cláusula al efecto de que ". . . ninguna persona será privada de su

---

(²) Hemos resuelto que la frase "delito grave" en el párrafo 2 de la Sección 11 del Artículo II de la Constitución no incluye ningún delito clasificado como menos grave, por legislación aprobada antes de entrar en vigor la Constitución, en el cual no se concedía necesariamente el derecho a juicio por jurado y que a ese respecto no importa la naturaleza del delito y las penas provistas por la ley para el mismo. Véase *Pueblo* v. *Miranda*, 79 D.P.R. 710 (1956).

libertad . . . sin debido proceso de ley . . . (Sección 7, Artículo II de la Constitución) o la disposición de que en todos los procesos criminales el acusado disfrutará del derecho " . . . a gozar de la presunción de inocencia . . ." (inciso 1, Sección 11, Artículo II de la Constitución) requieren un veredicto por unanimidad cuando el jurado declara culpable a un acusado por un delito grave. Obviamente no cabe interpretar las disposiciones de nuestra Carta de Derechos en forma tal que una de sus disposiciones resulte inconsistente con otra.

Tampoco podemos aceptar la contención del apelante de que sus derechos al amparo de la Constitución Federal fueron violados al rendirse un veredicto de culpabilidad que no fué unánime, es decir, en que sólo concurrieron más de nueve jurados. En las cortes federales donde son aplicables las Enmiendas VI y VII de la Constitución de los Estados Unidos, el veredicto de un jurado de doce en un caso criminal debe ser unánime. *American Publishing Co.* v. *Fisher*, 166 U. S. 464; *Andres* v. *United States*, 333 U. S. 740. Sin embargo, dichas Enmiendas no son aplicables a los estados ni tampoco a Puerto Rico. *Walker* v. *Sauvinet*, 92 U. S. 90; *Maxwell* v. *Dow*, 176 U. S. 581; *Balzac* v. *Puerto Rico*, 258 U. S. 298. A los fines de este caso no es preciso resolver si en Puerto Rico se aplica la cláusula del debido proceso de ley de la Enmienda V o la de la Enmienda XIV. Cf. *Mora* v. *Mejías*, 206 F. 2d 377, 382 (C.A. 1, 1953); *Stagg, Mather and Hough* v. *Descartes*, 244 F. 2d 578, 583 (C. A. 1, 1957). La Enmienda XIV sólo protege los derechos fundamentales de un acusado a gozar de un juicio justo e imparcial pero no exige ni el juicio por jurado ni el veredicto unánime como método de impartir justicia en casos criminales. Así pues, en *Maxwell* v. *Dow*, supra, la Corte Suprema de los Estados Unidos resolvió que el debido proceso de ley de la Enmienda XIV no incluía el derecho a acusación por gran jurado ni tampoco el derecho a juicio por jurado. La corte estableció la doctrina funda-

mental de que los estados estaban en libertad de determinar las reglas de procedimiento en los juicios criminales incluyendo la cuestión de "... si debe haber un jurado de doce o un jurado con menos miembros y *si el veredicto debe ser unánime o no.*" (Bastardillas nuestras.) (605). Añadió que estas cuestiones no guardan relación alguna con el carácter del Gobierno Federal y que un estado tiene absoluto control sobre los procedimientos en sus tribunales, tanto en casos civiles como en casos criminales, con la única limitación de que dichos procedimientos no pueden violar derechos fundamentales o estar en conflicto con disposiciones específicas de la Constitución Federal que sean aplicables. En *Jordan* v. *Massachusetts,* 225 U. S. 167, 176, se reafirmó la doctrina de que el debido proceso de ley de la Enmienda XIV no impone a los estados restricciones en cuanto a meras formas procesales en casos civiles o criminales, señalando específicamente lo siguiente: "En casos criminales el debido proceso de ley no se deniega por una ley del estado que hace innecesaria la acusación por un gran jurado ..., o por una ley que dispensa de la necesidad de un jurado de doce, *o de la unanimidad en el veredicto.*" (Bastardillas nuestras.) (176). Esa doctrina constitucional ha sido sostenida sin desviación alguna hasta el presente. Véanse *Brown* v. *New Jersey,* 175 U. S. 172; *Twining* v. *New Jersey,* 211 U. S. 78; *Snyder* v. *Massachusetts,* 291 U. S. 97; *Palko* v. *Connecticut,* 302 U. S. 319; *Adamson* v. *California,* 332 U. S. 46; *Rochin* v. *California,* 342 U. S. 165; *Breithaupt* v. *Abram,* 352 U. S. 432. En cuanto a la cláusula del debido proceso de ley de la Enmienda V, antes de aprobarse la Ley 600 (64 Stat. 319) y la Constitución del Estado Libre Asociado de Puerto Rico, el derecho a juicio por jurado, incluyendo la unanimidad del veredicto en casos criminales, no estaba protegido ni por la Carta Orgánica de 1917 ni por la Constitución Federal. *Hawaii* v. *Mankichi,* 190 U. S. 197; *Balzac* v. *Puerto Rico,* supra. Sería absurdo sostener

que, después de aprobada la Ley 600, la Enmienda V exige un juicio por jurado en los casos criminales que se ventilan en las cortes de Puerto Rico y también un veredicto por unanimidad. El propósito de la Ley 600 fué precisamente ampliar y no restringir los poderes y la autonomía de Puerto Rico sobre sus asuntos internos. Cf. *Figueroa* v. *People of Puerto Rico*, 232 F.2d 615 (C. A. 1, 1956).

La regla que exige la unanimidad del veredicto del jurado en casos criminales ha sido objeto de serias controversias. Así, por ejemplo, el Instituto Americano de Derecho en su Código de Procedimiento Criminal recomendó en 1930 que, excepto en casos que aparejaran la pena de muerte, los veredictos debían rendirse por el voto de diez de los jurados en todos los casos de delitos graves y por nueve votos en casos de delitos menos graves. Véase A.L.I. Code of Criminal Procedure (1930, sec. 355) y los comentarios a las págs. 1026 a 1031. En Oregón el Artículo I, Sección 11, de la Constitución dispone que el veredicto del jurado en casos criminales puede rendirse por el voto de diez de sus miembros, excepto cuando se trata de un caso de asesinato en primer grado, para el cual existe la pena de muerte y se requiere unanimidad. Véase 5 Ore.Rev. Stat. 1000–1001. La validez de dicha disposición ha sido sostenida por el Tribunal Supremo de ese Estado. *State* v. *Osbourne*, 57 P. 2d 1083 (Ore., 1936). El Artículo VII, Sección 41, de la Constitución de Louisiana dispone que, en un caso criminal por delito grave que no apareje la pena de muerte, el veredicto del jurado puede rendirse por voto de nueve o más de sus miembros. 2 West's La.St.Anno. 382–83. La Corte Suprema de Louisiana ha sostenido la validez de la referida disposición. Véanse *State* v. *Flattmann*, 135 So. 3 (La., 1931); *State* v. *Doucet*, 147 So. 500 (La., 1933). También se permiten veredictos que no son unánimes en casos criminales en los estados de Idaho, Montana, Oklahoma y Texas. Véanse Fellman, *The Defendant's Rights*, 1958, págs. 87–89; Win-

ters, *Majority Verdicts in the United States*, 26 J.Am.Jud. Soc'y 87 (1942); *Use of Majority Verdicts in the United States*, 33 J.Am.Jud.Soc'y 111 (1949). No corresponde a este Tribunal dirimir la controversia de si debe permitirse al jurado rendir veredicto en casos criminales por ¾ partes o si debe exigirse la unanimidad. A nuestro juicio un veredicto de culpabilidad en que cada uno de nueve o más miembros del jurado encuentran a un acusado culpable del delito que se le imputa más allá de duda razonable, no viola la norma constitucional que impone al estado la obligación de probar la culpabilidad del acusado *mediante prueba que lleva al convencimiento de que fuera de duda razonable él cometió el delito por el cual se le procesa.* Cf. *Leland* v. *Oregon,* 343 U. S. 790. Menos aún podría sostenerse que la falta de unanimidad viola la presunción de inocencia. La medida sobre persuasión de la prueba en casos criminales no se altera por el hecho de que el veredicto no sea unánime. Cada jurado que vota por un veredicto de culpabilidad tiene necesariamente que hacerlo a base de prueba que le lleva al convencimiento más allá de duda razonable de que el acusado cometió el delito. Si la ley dispone que el voto de nueve o más jurados en esas circunstancias es suficiente para rendir un veredicto de culpabilidad, no importa en absoluto lo que piensen los demás miembros de dicho "jurado". A estos fines, no podemos aceptar la teoría de que la mente del jurado es una e indivisible como si se tratase de una entidad metafísica que existe independientemente de los miembros que la componen. La lógica abstracta no dicta la solución a que debemos llegar sobre este punto. Si definimos el término "jurado" en la forma que pretende el apelante estaríamos decidiendo de antemano el verdadero problema que él plantea al argüir que la norma de prueba más allá de duda razonable exige el veredicto por unanimidad. Se trata de un problema práctico: proteger al acusado imponiendo una medida de persuasión estricta (fuera de duda razonable)

para juzgar si él es culpable. 9 Wigmore *on Evidence*, secs. 2497 et seq.; Morgan, Maguire and Weinstein, *Evidence* (1957) 417–438. Creemos que la falta de unanimidad no lesionó ese derecho del apelante.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado señor Santana Becerra se reserva para otra ocasión expresar criterio sobre algunos extremos de la cuestión planteada.